(5 App. Div. 212.)

### STILWELL et al. v. OCEAN STEAMSHIP CO. OF SAVANNAH.

(Supreme Court, Appellate Division, First Department. May 15, 1896.)

CONTRACTS—MUTUAL AGREEMENT.

> Defendant, by telephone, asked plaintiffs what their rates for transportation of 6,000 barrels of rosin to Chicago and 2,500 barrels of rosin to Buffalo would be. Plaintiff stated the rates, and defendant replied that they were satisfactory, and asked plaintiffs to confirm the statement by letter, which plaintiffs did, requesting defendant to advise them "if accepted." Thereupon defendant wrote a letter of acceptance. *Held*, that such communications constituted a mutually binding contract, by which defendant agreed to furnish the rosin for transportation, and plaintiffs agreed to transport it at the specified rates.

Appeal from circuit court, New York county.

Action by Julius B. Stilwell and another against the Ocean Steamship Company of Savannah to recover damages for breach of a contract. From a judgment entered on a verdict in favor of plaintiffs, and from an order denying a motion for a new trial, made on the minutes, defendant appeals. Affirmed.

The main facts upon which the question of law depends are fairly stated by the learned trial judge in his charge to the jury as follows:

"The evidence shows—and in that regard the evidence is undisputed—that on the 3d day of August, 1891, the defendant communicated with the plaintiffs over the telephone, and asked the plaintiffs what their rates would be for the transportation of 6,000 barrels of rosin to Chicago and 2,500 barrels of rosin to Buffalo. The answer was that the rates would be, on the 6,000 barrels of rosin to Chicago, twelve cents per 100 pounds, and on the 2,500 barrels of rosin to Buffalo 6½ cents per 100 pounds. The reply was that that was satisfactory, and the plaintiffs were thereupon requested to confirm it by letter. In pursuance of that request the plaintiffs addressed the following letter, which is in evidence, bearing date August 3, 1891, to the Ocean Steamship Company, the defendant, in this case, in which they state as follows:

" 'Gentlemen: Herewith confirmed, the rates quoted you over the telephone this day, viz.: 6,000 barrels of rosin, New York to Chicago, 12 cts. per 100 lbs.; 2,500 barrels rosin, New York to Buffalo, 6½ cts. per 100 lbs. Please advise if accepted.

" 'Yours, truly,                                           G. W. Stilwell, Jr.,
" 'Mgr. Inland Transportation Co.'

"And then follow the words:

" 'Buffalo quotation is for shipment this month'; that is for the month of August.

"Pursuant to the request which was contained in that letter that the defendant would advise the plaintiffs if this proposition or offer was accepted, a letter was addressed by the defendant's agent to one of the plaintiffs, Mr. George W. Stilwell, Jr., on the following day, which reads as follows:

" 'Mr. George W. Stilwell, Jr., G. M. Inland Transportation Company, 109 & 111 Broad St., N. Y. City—Dear Sir: Yours of August 3d, confirming rates on rosin to Chicago and Buffalo received, and we beg leave to accept same.
" 'Yours, respectfully,          R. L. Walker, Agt., per Hoffman.' "

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

William N. Cohen, for appellant.
Robert D. Benedict, for respondents.

BARRETT, J.    The defendant claims that no contract was proved by the facts above stated, and that the transaction evidenced thereby amounted to nothing more than an agreed statement as to the rates. If that was the understanding of the parties, they would hardly have resorted to formal writings upon the subject.    The intention surely was to do something more than convey information.    The intention was clearly to bind.    The letters were not written merely to refresh the recollection of the people who had spoken to each other at the telephone, nor to keep a record of a passing conversation.    It will be observed that there is nothing indefinite either in the telephonic communication or in the letters.    Every element of a contract is clearly specified.    The precise number of barrels is stated, the charge per pound for transportation, the place where the goods are to be received and where they are to be delivered.    As to part of the goods, shipment is limited to the very month when the arrangement was made.    Thus the case is distinguished from Railway Co. v. Dane, 43 N. Y. 240, where the defendant offered by letter to receive iron, not to exceed a certain number of tons.    It is true that in the case at bar the parties do not literally use the words "We agree to transport 6,000 barrels of rosin from New York to Chicago at 12 cts. per 100 pounds, and 2,500 barrels of rosin from New York to Buffalo at 6½ cts. per 100 pounds."    But the agreement upon the one side to furnish the rosin for transportation, and upon the other to transport it, is plainly implied from the language used.    They were business men.    They were not drafting a legal document when they wrote these letters.    They were making their contract in their own way, and expressing themselves in their common parlance.    It was either that or an immense amount of precise formality about nothing.    The letters were senseless unless they intended to contract; and there could be no binding contract about a rate disconnected with a contract to transport at such rate.    The defendant requested a written confirmation of the telephone arrangement. The plaintiffs requested a written acceptance of that confirmation. All this was surely not to put each other upon honor, or to effect a mere option.    When one side confirmed the rates quoted, that was the carriers' short, mercantile way of saying that they would transport at those rates.    When the other side accepted the confirmed rate, that was the shippers' or brother carriers' short mercantile

way of saying that they would furnish the goods and pay the rates.

There was no question to go to the jury as to the intention of the parties. It was a pure question of law upon the plain language of the letters which followed the telephonic communication. Nor was there evidence suggestive of any other possible meaning than that fairly apparent upon the face of the writings construed with reference to such previous communications. Indeed, the surrounding circumstances, and everything which subsequently transpired, are conclusive in favor of the construction put upon these letters by the learned judge. There was not a particle of evidence favoring any other construction. The defendant's agent, Walker, testified that a year before this transaction the plaintiffs notified them that "rates, to hold good, must be accepted." It seems that the defendant had previously suffered from the lack of a binding contract, and had found itself helpless when rates were suddenly advanced. It was doubtless to prevent this state of things that it was determined in future to make binding arrangements with regard to the rates. But how would that avail if, as the defendant contends, the carriers were not to be bound by their engagement, nor the shippers (who were brother carriers) by their acceptance thereof? It is only upon the construction that they were bound, and that an agreement with regard to the rates, specifying with precision the goods to be carried, was an agreement to transport the particular goods so specified at those rates, that common sense can be attributed to their acts. That the defendant understood the contract as thus interpreted is accentuated by what subsequently transpired. The defendant furnished a part of the goods. When the plaintiffs, in writing and verbally, requested it to furnish more, there was no suggestion of a defective contract, no intimation of the nonexistence of a binding obligation. On the contrary, the defendant's chief clerk testified that the only reason why the second lot was not given to the plaintiffs was that they were not sufficiently prompt in taking it when offered. He did not then claim that the defendant was not bound to give the plaintiffs the whole lot. All that he claimed was that the second lot had been offered to them in the regular course of business,—naturally under the contract,—and that they had not sent a boat for it in due time. This chief clerk also testified that he made no arrangement with other parties to transport this second lot until after the plaintiffs' failure to send the boat for it, thus contradicting the statement made by Mr. Walker in a letter which he wrote to the plaintiffs on September 15, 1891 (when, owing to the plaintiffs' firm insistence upon what they characterized as a well-understood arrangement, the issue had to be met), to the effect that the defendant had secured better terms from the plaintiffs' competitors as far back as the 4th of August. This letter of Mr. Walker's was evidently written to present the defendant's side of the case in as favorable an aspect as possible, and it is significant that its statements should be controverted by his own employé. It is equally significant that in this letter Mr. Walker could only account for the delivery to the plaintiffs of the first lot, notwithstanding that, upon his own showing, these goods should, in the regular course of business, have gone to

the competitors from whom he said the defendant had received bet-
ter terms, by the suggestion that they were delivered to the plaintiffs
"in error." We think it clear that the defendant understood the
contract precisely as the plaintiffs did, but, having decided to break
its bargain, and to deal with others, it sought to avoid its terms by
the shallow pretense of an original misunderstanding. The case is
clearly within the principle stated by Grover, J., in Railway Co. v.
Dane, supra, that, if the plaintiff there had accepted the defendant's
proposition for the transportation of any specified quantity of goods,
a contract mutually obligatory would have resulted therefrom, for
the breach of which by either party the other could have maintained
an action for the recovery of the damages thereby sustained. That
is this case. The contract here was mutually obligatory. The
plaintiffs could not, after their letter and the defendant's reply, ad-
vance the rates for the transportation of the particular 8,500 barrels
of rosin specified therein. They were thereafter bound to take the
goods, and transport them at the confirmed and accepted rates. The
defendant had the corresponding obligation to furnish the particular
goods for transportation at these rates. The contract was not
unilateral. It was mutually obligatory, and either party would
have been liable for its breach.

As to the damages, the jury awarded a less sum than the evidence
warranted. We think the damages were fairly proved, and that no
error was committed on that head. No other question is presented
calling for special consideration. We find no error in the record,
and the judgment and order denying the defendant's motion for a
new trial should be affirmed, with costs. All concur.