## Charles M. Netterstrom et al. v. Peerless Portland Cement Company.

### Gen. No. 13,077.

1. BARGAIN AND SALE—*what constitutes.* An offer to sell cement "good for 10,000 barrels" is an offer to sell 10,000 barrels and the acceptance of such offer concludes a valid contract to purchase and sell that quantity of cement.

2. PRINCIPAL—*effect of proceeding against agent upon liability of.* The mere fact that a party makes a contract with agents and looks to or endeavors to hold them liable thereon, does not constitute such an election as will relieve the principal from liability.

Assumpsit. Appeal from the Circuit Court of Cook County; the Hon. MERRITT W. PINCKNEY, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1906. Reversed and remanded. Opinion filed April 30, 1907.

ROSENTHAL & HAMILL and CHARLES H. PEASE, for appellants.

RUSSELL M. WING, FRED M. WING and FRED W. BENTLEY, for appellee.

MR. JUSTICE BAKER delivered the opinion of the court.

Plaintiff brought an action of assumpsit to recover the price or value of 1,000 barrels of Peerless Portland Cement sold and delivered by plaintiff to defendants in 1902, and recovered a judgment for $1,123. As to plaintiff's claim there is no dispute.

The defendants set up in a plea of set-off that plaintiff entered into a contract with defendants to furnish to them 10,000 barrels of said cement, and after delivering the said 1,000 barrels, to recover the price of which the suit was brought, refused to furnish any more, and the price of cement having advanced, defendants were, by the breach of said contract, damaged in the sum of $10,000.

The controverted question in the case was as to the existence of the contract for 10,000 barrels of cement set up by the defendants in their plea of set-off.

In the spring of 1902, Zapel and Olsen were partners in business in Chicago under the name of the Chicago Building & Street Material Company. The evidence tends to show that about the middle of April of that year, Zapel and Olsen were made by the plaintiff company its agents to sell cement at Chicago. The contract of agency was verbal, made by Patterson, the general manager of plaintiff, for the plaintiff, and by Zapel for his firm.

April 21, Patterson wrote Zapel as follows:—

"I beg to confirm my talk with you and to say that on all orders accepted by us from you, price to you will be $1.20 per bbl., in cloth sacks, and $1.25 per bbl. in paper sacks delivered in car load lots by rail any place in Cook County where switching charges from Michigan Central R.R. will not exceed $5.00 per car. We are to bill everything direct and you to make collections in our name only. We to pay you in commissions all amounts received by us from your trade over and above price named to you. You to stand losses, if any. All cloth sacks are to be charged for at 10 cts. each additional, to be billed and paid for as cement. The same amount is to be credited to the customer upon their return to our factory in good condition, freight prepaid. I trust that this covers all my talk with you."

The contention of defendants, based upon Zapel's testimony, was that Patterson in the verbal agreement with Zapel agreed that plaintiff would furnish Zapel and Olsen 50,000 barrels of cement in 1902. This provision is not

mentioned in Patterson's letter of April 21, and Patterson testified that no such verbal agreement was made with Zapel.

The following agreement was made between Zapel and Olsen and defendants by proposition and acceptance:

"Chicago April 26, 1902.

Messrs. C. M. Netterstrom & Son,
        84 La Salle St.

Gentlemen: I hereby propose to furnish you Peerless Portland Cement f. o. b. car anywhere in Chicago and Cook Co. where switching does not exceed $5.00 per car from the Michigan Central R.R.

The price will be on the above mentioned Portland Cement $132½ per barrel in cloth sacks, all cloth sacks to be charged as cement at 10 cents each additional, for which amount you will be given credit when sacks are returned to our factory in good condition, freight prepaid.

This proposition will hold good for 10,000 barrels.

Our company guarantees all cement shipped by them to stand the city test.

Shipments to commence as soon as factory is in operation, which I think will be between 15th of May and 1st of June, 1902.

Payments to be due on or before the 10th of each month for all cement shipped the previous month.

Hoping this proposition will be satisfactory to you and you will accept the same, we remain

Respectfully submitted,

CHICAGO BUILDING & STREET MATERIAL CO.,
                per Herm. M. Zapel.

We accept the above proposition this 29th day of April, 1902.

C. M. NETTERSTROM & SON."

Zapel testified that he told defendants that in making this agreement he was acting for the plaintiff.

Appellee contends that this contract was not admissible because the price stated therein was $132½ per barrel, while the plea averred that the price was $1.32½ per barrel. Zapel testified that the price named in the contract of $132½ was intended for $1.32½. We think the court did not err

in admitting the document in evidence, nor in holding that it was a contract to furnish cement at $1.32½ per barrel. The proposition in the agreement in question was:

"I propose to furnish cement at $132½ per barrel, shipments to commence as soon as factory is in operation. This proposition will hold good for 10,000 barrels.
Chicago Street Material & Building Company,"

which was accepted as follows:

"We accept the above proposition this 29th day of April, 1902.
C. M. NETTERSTROM & SON."

Appellee contends that the proposition was merely an offer to furnish cement not exceeding 10,000 barrels; that by the acceptance of such offer the seller did not agree to furnish, nor the buyer to accept any definite number of barrels, and that the agreement was therefore void. If the offer had been to furnish, not exceeding 10,000 barrels, an acceptance of such offer would be no more than an acceptance of an offered option by the seller to sell to the buyer such quantity of cement as the seller chose to deliver up to 10,000 barrels, and such an agreement would not be binding upon either party. C. & G. E. Ry. Co. v. Dane, 43 N. Y., 240.

We think that the offer to sell cement: "good for 10,000 barrels," was an offer to sell 10,000 barrels, and that the acceptance of such offer made a valid contract of purchase and sale of that quantity of cement. The distinction between such an offer and acceptance as this and the offer and acceptance in C. & G. E. Ry. Co. v. Dane, *supra,* is well stated in Stillwell v. Ocean Steamship Co., 5 App. Div., 212.

The trial court gave, at the request of defendants, the following instruction, which we think correctly states the rule of law applicable to the contract in question:

"The court instructs the jury that the document offered in evidence herein as defendant's Exhibit 3, is a contract

for the sale to defendants of 10,000 barrels of Peerless Portland Cement, upon the terms and under the provisions therein stated; that no time for the completion of the delivery of such cement being specified therein, a reasonable time must be implied, and what is a reasonable time is a question for the jury to determine under the instructions of the court and all the facts and circumstances proved in the case."

The court gave for the plaintiff the following instruction:

"The court instructs the jury as a matter of law, that one dealing with an agent does so at his peril, and when the agent's authority is in writing he is bound to take notice of its terms. And if you find from the evidence in this case that the defendant has failed to prove by the greater weight of the evidence that Zapel or the Chicago Building and Street Material Company were authorized by the plaintiff to make the contract upon which the defendant relies, then in that event you should find for the plaintiff."

This instruction is, we think, erroneous for two reasons: first, because it ignores the question of ratification by the plaintiff of the contract between Zapel and Olsen and the defendants. Zapel and Olsen wrote plaintiff May 22, that they had an order from C. M. Netterstrom & Son for 10,000 barrels of cement, and that they would be ready for cement about June 15. June 26, they wrote plaintiff that Netterstrom would be ready for cement about July 1, and would need about a car a day. July 12, Zapel wrote plaintiff, "I herewith place an order of 1 car per day, which is on contract with C. M. Netterstrom & Son, which was sold before May 1." Other correspondence followed in relation to the Netterstrom order, and it was not until August 6 that plaintiff informed Zapel and Olsen that the Netterstrom order was for only 1,000 barrels, and not until still later that plaintiff informed defendants that it would not furnish the cement sold them by Zapel and Olsen.

The evidence tends to show, as has been said, that Zapel and Olsen were authorized to sell cement as the agents of

plaintiff. If they sold a quantity greater than they had authority to sell, it was the duty of the plaintiff to repudiate such sale when informed of it, and an intention to ratify the same will be presumed from silence beyond a reasonable time. Second, because it assumes that the agents' authority was in writing. The evidence tends to show that the agency was created by verbal contract between Zapel and Patterson. Patterson could not, by a letter written some days afterwards, change or modify such verbal contract. If Zapel had answered the letter, assenting to Patterson's version of the conversation between them, a different question would be presented.

The court gave for the plaintiff the following instruction:

"4. The jury are instructed that if you believe from the evidence that the defendants made their original contract with the Chicago Building and Street Material Company, and looked to or endeavored to hold the Chicago Building and Street Material Company liable on said contract, and said contract was retained by the Chicago Building and Street Material Company until after the controversy, if any, arose between the plaintiff and the Chicago Building and Street Material Company and the defendants as to whether the defendants had ordered 10,000 barrels or 1,000 barrels of cement, then you will find that the defendants' claim, if any, with respect to the non-delivery of cement, would not be against the plaintiff, and under such findings, you are instructed not to allow the defendants anything under their claim of set-off."

It was no part of the agreement between the plaintiff and Zapel and Olsen that the latter should send to the plaintiff such contracts in writing as they might make for the sale of cement, and no inference can justly be drawn from the fact that they retained the original contract between themselves and defendants until after the controversy mentioned in said instruction arose. The mere fact that the defendants made this contract with Zapel and Olsen and looked to or endeavored to hold Zapel and Olsen liable thereon, if they were the agents of the plaintiff and acted as such agents in making

the contract with the defendants, is not such an election as will relieve the plaintiff from liability; to have such effect it must appear that the defendants intended to abandon all claim against the plaintiff and looked solely to Zapel and Olsen. Wharton on Agency, section 472.

In Ferry v. Moore, 18 Ill. App., 135, it was held that the commencement of a suit against the agent did not operate as an election which would discharge the principal. In that case it was said by Mr. Justice Bailey, p. 141, that to relieve the principal: "there must be acts indicating an intent, with full knowledge of all the facts, to give sole credit to the agent, and to abandon all claim against the principal."

We think it was reversible error to give said instructions, and for such error the judgment will be reversed and the cause remanded.

*Reversed and remanded.*